UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
CAROLYN COUSINS, <u>et al.</u>,       )
                                )
          Plaintiffs,           )
                                )
          v.                    )    Civil Action No. 09-1677 (RWR)
                                )
DISTRICT OF COLUMBIA,           )
                                )
          Defendant.            )
_____)

<u>MEMORANDUM OPINION</u>

Plaintiffs Carolyn Cousins and her minor son, J.C., bring
this action against the District of Columbia ("D.C.") under the
Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.
§ 1400, <u>et seq.</u>, challenging a hearing officer's decision denying
the portion of Cousins's due process complaint seeking an award
of compensatory education to J.C.  The parties have cross-moved
for summary judgment, disputing whether the plaintiffs satisfied
their burden at the administrative hearing to produce sufficient
evidence demonstrating the type and quantum of compensatory
education needed to correct J.C.'s educational deficits.  Because
the record supported granting a compensatory education award and
the hearing officer erred by not granting one, summary judgment
will be granted in favor of the plaintiffs and the case will be
remanded to the hearing officer.

- 2 -

BACKGROUND

During the 2004-2008 school years, J.C. was a student
enrolled in the Bright Beginnings Child Development Center's Head
Start Program ("Bright Beginnings"). (Administrative Record
("A.R."), Hr'g Tr., July 8, 2009 ("Hr'g Tr."), at 14:1-3, 39:20-
21; A.R. at 19-20; Pls.' Mem. of P. & A. in Supp. of Pls.' Mot.
for Summ. J. (Pls.' Mem.) at 4.)  His speech and language
impairment rendered him eligible for special education services.
(A.R. at 5, 20.)  Accordingly, on October 2, 2007 and May 13,
2008, Bright Beginnings developed individual education programs
("IEPs")[1] setting forth language, speech, and occupational therapy
("OT") tailored to J.C.'s needs.  (Id. at 5, 8, 20.)  He enrolled
at Miner Elementary School ("Miner") for the 2008-2009 school
year.  (Hr'g Tr. at 40:17-19.)  Cousins submitted to Miner in
July of 2008 J.C.'s special education records, including previous
evaluations and IEPs.  (A.R. at 5; Hr'g Tr. at 42:11-13.)

In August of 2008, J.C. developed a seizure disorder and
underwent brain surgery that caused him to miss the first two to
three weeks of Miner's 2008-2009 school year.  (Hr'g Tr. at 41:2-
15.)  Cousins provided Miner with information about J.C.'s

---

[1] A school must "provid[e] personalized instruction with
sufficient support services to permit the child to benefit
educationally from that instruction" and the instructions and
services "must comport with the child's IEP."  Bd. of Educ. of
the Hendrick Hudson Central Sch. Dist., Westchester Cnty. v.
Rowley, 458 U.S. 176, 203 (1982) (citation omitted).

- 3 -

surgery. (Id. at 41:16-22.)[2]  On February 19, 2009, Miner

convened a hearing to determine J.C.'s eligibility for special

education services.  (A.R. at 3.)  The school determined J.C. to

be ineligible (id.) and declined to conduct further evaluations

(A.R. at 9).  Despite having received J.C.'s special education

records and knowing of his surgery, Miner provided J.C. no

special education or related services for the entire 2008-2009

school year.  (See id.)

On May 4, 2009, the plaintiffs filed a due process complaint

against the D.C. Public Schools ("DCPS").  They alleged that it

had

> denied [J.C.] a Free Appropriate Public Education
> ("FAPE") by failing to implement [J.C.'s] May 13, 2008,
> . . . [IEP], failing to develop a new IEP or issue a
> notice of non-eligibility within 30 days of receiving
> the IEP; failing to comprehensively evaluate [J.C.] for
> suspected disabilities; and by determining [J.C.]
> ineligible for special education and related services.

(A.R. at 3.)  The plaintiffs therefore requested that a hearing

officer order DCPS to provide compensatory education to J.C.  In

particular, they sought funding for a compensatory education plan

and for "independent comprehensive evaluations including . . .

psycho-educational, neuropsychological, speech and language

evaluations[.]"  (Id.)  They also wanted DCPS to be ordered to

"convene a multidisciplinary team ["MDT"] meeting to review the

---

[2] His recovery caused J.C. to log forty absences between
August of 2008 and April of 2009.  (Hr'g Tr. at 45:18-22.)

- 4 -

evaluations, discuss and determine [J.C.'s] eligibility, develop
an appropriate IEP if necessary, [and] determine and provide an
educational placement with appropriate special education and
related services." (<u>Id.</u>)

At the administrative hearing held on July 8, 2009, the
plaintiffs presented among their witnesses two experts to support
their request for compensatory education. The first was Janet
Thomas, an occupational therapist and consultant at Bright
Beginnings. (<u>Id.</u> at 69:1-2; 71:7.) Thomas testified that she
had provided OT to J.C. from 2006 until 2008 (<u>see id.</u> at 89:16-
19) and that, during J.C.'s May 13, 2008 MDT/IEP meeting (<u>id.</u> at
86:21-22, 88:12), she recommended that he continue to participate
in OT and speech and language services (<u>id.</u> at 88:11-14). She
also stated that she evaluated J.C. in June of 2009 (<u>id.</u> at
90:14-15), at the end of J.C.'s year at Miner, to assess his fine
and visual motor skills and "determine what his needs might be"
(<u>id.</u> at 90:10-12; <u>see also</u> Pls.' Mem. at 6).

Thomas "was struck by some observations that [she] had not
previously seen." (Hr'g Tr. at 91:13-14.) She noted that J.C.
was "thinner," that he "walk[ed] with a shuffling gait," that "he
had some tremors" and that he "appeared noticeably weaker than
what [she] had previously observed." (<u>Id.</u> at 91:14-19.) She
testified that "[h]e had a hard time . . . just doing very basic
tasks" (<u>id.</u> at 92:4-5), such as difficulty "taking himself to the

bathroom" (id. at 104:13-14), and said "now we have to make up for some lost time." (Id. at 96:12-13.) Thomas also testified that "the gap between the expectation of what he's supposed to do and what he is capable of doing . . . continues to grow wider." (Id. at 94:15-17.) She concluded that J.C. would require "short, intensive" OT for an hour a day "until the end of the summer" in order to restore his motor skills to the level they would have been had he received a FAPE during the 2008-2009 school year. (Id. at 105:16-22, 106:1-3, 107:1-3, 107:8.) She also recommended that J.C. be reassessed at the end of the summer to determine which additional services were necessary. (Id. at 106:1-3.)

The plaintiffs' second expert witness was Dr. Diane Jacobstein, a clinical psychologist at Georgetown University who provided services at Bright Beginnings and who had worked with J.C. during his tenure there. (Id. at 126:15-17; see also Pls.' Mem. at 7.) Dr. Jacobstein corroborated Thomas's testimony that the MDT/IEP team convened on May 13, 2008 had recommended "ongoing speech and language and occupational therapy services" for J.C. (Hr'g Tr. at 139:12-16.) She reevaluated J.C. on June 23, 2009 (Hr'g Tr. at 145:19), after his year at Miner, and determined that his "scores had really dropped in some rather frankly, alarming ways." (Hr'g Tr. at 146:19-20.) For example, "his score on the spatial skills . . . plummeted" (id. at 147:6),

and "his score on the verbal comprehension task ha[d] really
fallen[.]"  (<u>Id.</u> at 150:3-4.)  She also noted that J.C. was "two
years behind[] where he should be in terms of his ability to
follow oral directions" (<u>id.</u> at 150:12-13), and described
specific missing motor and phonemic skills J.C. should have had
at the conclusion of the 2008-2009 school year.  (<u>See, e.g.</u>, <u>id.</u>
at 150:16 - 154:5, 176:11 - 178:3.)

Counsel asked "what it would take to put [J.C.] in the
position he would have been in had he received" special education
services during the 2008-09 school year.  Dr. Jacobstein
responded that "at a minimum," he would need "a lot of hours" of
"very intensive individualized instruction" in phonemic
awareness.  (<u>Id.</u> at 156:4-6, 12-13; <u>see also</u> <u>id.</u> at 178:12 -
179:3.)  Counsel asked "[w]hat type of program" that would look
like.  Dr. Jacobstein said "individualized training in phonemic
awareness, administered usually by a speech and language
pathologist, sometimes by a special educator or reading
specialist."  (<u>Id.</u> at 156:11-15.)  When asked how often and for
how long J.C. should receive those services, she said that for
the six or seven weeks remaining in the summer, she estimated
"daily intensive services" for "an hour a day[.]"  (<u>Id.</u> at
156:20-21; 157:9.)  Dr. Jacobstein also recommended six weeks of
"very intensive" speech and language instruction (<u>id.</u> at 179:11-
12), motor skills instruction, and OT, and estimated that J.C.

- 7 -

would be able to tolerate "3, 4 hours a day total." (<u>Id.</u> at

180:5.)  While she stated that he "still might not be where he

needs to be" at the end of the summer (<u>id.</u> at 156:21-22) -- "[h]e

very likely will still not be . . . where he needs to be" (<u>id.</u> at

156:22 - 157:1) -- she also recommended that J.C. receive

additional evaluations at the end of the summer and that he be

taught in "a classroom for children with learning

disabilities[.]"  (<u>Id.</u> at 161:17-18.)

On July 17, 2009, the hearing officer determined that DCPS

had denied J.C. a FAPE and ordered DCPS, as plaintiffs had

requested, to convene an MDT/eligibility meeting to review all

prior and new evaluations, determine J.C.'s eligibility, develop

an IEP, and determine placement if warranted.  (A.R. at 12.)  The

hearing officer also held that J.C. was entitled to a

compensatory education award.  (A.R. at 10.)  She nonetheless

denied J.C. a compensatory education award,[3] stating that the

plaintiffs had not produced sufficient evidence under <u>Reid ex</u>

<u>rel. Reid v. D.C.</u>, 401 F.3d 516 (D.C. Cir. 2006), to show "the

specific compensatory measures needed to best correct [J.C.'s

---

[3] "[E]ven if entitlement to an award is shown through a
denial of a free and appropriate public education, '[i]t may be
conceivable that no compensatory education is required for the
denial of a [FAPE] . . . either because it would not help or
because [the student] has flourished in his current placement[.]"
<u>Phillips ex rel. T.P. v. D.C.</u>, 736 F. Supp. 2d 240, 247 (D.D.C.
2010) (citation omitted).

- 8 -

educational] deficits[.]"[4]  (A.R. at 10.)  According to the

hearing officer, J.C. and his mother

> had the burden of showing 1) that as a result of
> [DCPS's] violation of IDEIA, [J.C.] would have
> progressed to a certain academic level, and 2) that
> there exists a type and amount of compensatory
> education services that would bring [J.C.] to the level
> [he] would have been but for [DCPS's] violation.

(A.R. at 11.)  After summarizing only some parts of the

witnesses' testimony,[5] the hearing officer concluded that it:

> failed to sufficiently support - under the standards of
> Reid, the calculation of the number of hours of compensatory
> education, what the compensatory plan would consist of, and
> what program, if any, would be used to get the student to
> where he should be.  Furthermore there was insufficient
> evidence to demonstrate where academically [J.C.] is as
> compared to where he should be.

(Id.)

The plaintiffs filed this action seeking reversal of the HOD

denying Cousins's request for a specific compensatory education

award.[6]  They have moved for summary judgment, arguing that "[i]f

---

[4] Contrary to DCPS' claim (see, e.g., Def.'s Opp'n to Pls.'
Mot. for Summ. J. & Def.'s Cross-Mot., Def.'s Stmt. of Undisputed
Mat. Facts ¶ 33), the hearing officer did not find that the
plaintiffs had failed to describe any educational deficit that
J.C. had or establish a causal link between DCPS' denying J.C. a
FAPE and any such deficit.  What she found was that plaintiffs'
purportedly insufficient evidence prevented her from identifying
what specific compensatory education award to fashion.  (A.R. at
10.)

[5] The HOD at one point mischaracterized Dr. Jacobstein as an
"Occupational Therapist" rather than a clinical psychologist.
(A.R. at 11.)

[6] "[A]ny party aggrieved by an HOD may challenge the
decision in a civil action."  Brown v. D.C., 568 F. Supp. 2d 44,

this evidence does not satisfy the <u>Reid</u> standard, then nothing would." (Pls.' Mem. at 13.)  The plaintiffs state that they adduced expert testimony as to "where J.C. was functioning" at the beginning and end of the 2008-09 school year, "what specific progress J.C. would have made over the course of the 2008-09 school year had he received appropriate services[,]" and "what, how frequently, and for how long services would need to be provided in order to put J.C. in the place that he would have been had he received the services that he should have during the 2008-09 school year." (Pls.' Mem. at 13.)

   D.C. has cross-moved for summary judgment, reiterating that plaintiffs' evidentiary proffer failed to satisfy <u>Reid</u>. (Def.'s Mem. of P. & A. in Supp. of Def.'s Opp'n to Pl.'s Mot. for Summ. J., & Def.'s Cross-Mot. for Summ. J. ("Def.'s Mem.") at 5.) Specifically, D.C. argues that the plaintiffs failed to explain how the requested compensatory award would resolve the alleged deprivation. (<u>Id.</u>)  In addition, D.C. argues that the plaintiffs' appeal is moot because DCPS is providing J.C. with "24.5 hours of weekly specialized instruction, 1 hour of weekly occupational therapy, 1 hour of weekly physical therapy, 1 hour of speech-language pathology, and a dedicated aide." (<u>Id.</u>) According to D.C., J.C. already is "receiving special education

_____

47 (D.D.C. 2008).

- 10 -

services intended [to] restore him to the academic level of his peers." (<u>Id.</u>)[7]

<u>DISCUSSION</u>

HODs are reviewed under a "non-deferential standard," <u>Reid</u>, 401 F.3d at 522, but the challenging party "must at least take on the burden of persuading the court that the hearing officer was wrong." <u>Id.</u> at 521; <u>see</u> <u>also</u> <u>Kerkham v. McKenzie</u>, 862 F.2d 884, 887 (D.C. Cir. 1988).  The reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as [it] determines is appropriate." <u>Reid</u>, 401 F.3d at 521.  However, a court shall not "substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." <u>Kerkam</u>, 862 F.2d at 887 (quoting <u>Bd. of Educ. of Hendrick Hudson Ctrl Sch. Dist., Westchester Cnty. v. Rowley</u>, 458 U.S. 176, 206 (1982)).

---

[7] D.C. also argues that the hearing officer correctly concluded that the plaintiffs failed to demonstrate J.C.'s specific educational deficit, and that their compensatory request failed to account for J.C.'s more than 40 absences during the 2008-2009 school year, and his weakened physical condition as a result of brain surgery on August 25, 2008.  (Def.'s Mem. at 5.) As is noted above, DCPS misstates the hearing officer's conclusions.  In addition, the conclusions the hearing officer did reach did not purport to be based upon any gap in proof of J.C.'s deficits or what caused them.

- 11 -

Summary judgment is proper "when the pleadings and evidence show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Akers v. Beal Bank, Civil Action No. 09-0724 (RMU), 2012 WL 639287, at *1 (D.D.C. Feb. 29, 2012) (quoting Fed. R. Civ. P. 56(a)).  A dispute is "genuine" if a reasonable trier of fact, given the evidence presented, could return a verdict for the nonmoving party.  Musick v. Salazar, 839 F. Supp. 2d 86, 93 (D.D.C. 2012).  "'A fact is material if a dispute over it might affect the outcome of a suit under the governing law.'"  Id. (quoting Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006)).

In considering a summary judgment motion, a court may not make credibility determinations, weigh evidence, or "draw[] . . . legitimate inferences from the facts[.]"  Estate of Parsons, 651 F.3d at 123 (quoting Anderson, 477 U.S. at 253).  Rather, a court accepts as true the nonmovant's evidence and draws "justifiable inferences . . . in [her] favor."  Id. (quotation marks and citation omitted).  "[I]f the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its significance, summary judgment is improper."  Etheridge, 789 F. Supp. 2d at 32 (quotation marks and citation omitted).  "[I]f undisputed facts point unerringly to a single, inevitable conclusion, [however,] summary judgment [is]

- 12 -

warranted." <u>Keefe Co. v. Americable Int'l, Inc.</u>, 169 F.3d 34, 38
(D.C. Cir. 1999) (quotation marks and citation omitted).

The central question in this case is whether the plaintiffs'
evidentiary proffer before the hearing officer satisfied the
specific showings required by <u>Reid</u>. (<u>Compare</u> Pls.' Mem. at 13
with Def.'s Mem. at 5 (disputing whether the hearing officer's
findings were supported by the record).)  The plaintiff in <u>Reid</u>,
a "sixteen-year-old District of Columbia resident . . .
suffer[ed] from documented learning disabilities . . . that
affect[ed] his short-term auditory memory, formation of
grammatical sentences, and articulation of word sounds."  <u>Reid</u>,
401 F.3d at 519.  DCPS placed him "in a regular fourth-grade
class" without "performing any disability evaluation, . . .
[and] [o]nly after a full school year of unsatisfactory grades
did DCPS recognize [his] disability and develop an IEP."  <u>Id.</u>
Despite the IEP, Reid's reading level slipped from a third-grade
to a second-grade level, and his "intellectual ability placed him
in the ninth percentile for his age."  <u>Id.</u> at 520.  Reid's mother
demanded and received a due process hearing in which experts -- a
psychologist, a speech language pathologist/audiologist, and an
educational consultant -- all testified that DCPS should have
known that Reid was disabled.  <u>Id.</u> at 520.  On the basis of this
testimony, the hearing officer concluded that the IEP was ill-
suited to Reid's needs and that Reid required "a full-time

- 13 -

special education program." <u>Id.</u>  The officer also "concluded
that DCPS had denied [Reid a] FAPE for roughly four-and-a-half
years," and "ordered 810 hours of compensatory education[.]"  <u>Id.</u>
The sum derived from an award of "1 hour for each day of special
education services not provided." <u>Id.</u>  However, Reid and his
mother "challenged both the number of hours awarded as
compensatory education and the allowance for reduction or
termination by the IEP team." <u>Id.</u> at 521.  The district court
"affirmed the administrative award." <u>Id.</u> at 521.

     The question presented to the D.C. Circuit was "whether the
district court had abused its discretion in ordering, without
explanation, tutoring in the amount of one hour for each day that
a learning-disabled sixteen-year-old boy went without a FAPE."
<u>Branham v. Gov't of D.C.</u>, 427 F.3d 7, 9 (D.C. Cir. 2005).  The
court "confirmed that compensatory education awards are available
for IDEA violations, . . . rejected the district court's
'mechanical' calculation of that award, . . . [reasoned] that a
'cookie-cutter' approach . . . cannot be squared with IDEA's
conferral of equitable authority to 'grant such relief as the
district court determines is appropriate,' 20 U.S.C.
§ 1415(i)(2)(C)(iii), [and] held that 'the ultimate
[compensatory] award must be reasonably calculated to provide the
educational benefits that likely would have accrued from special
education services the school district should have supplied in

- 14 -

the first place,' <u>Reid</u>, 401 F.3d at 524." <u>Id.</u> Noting that "compensatory awards must . . . compensate[,]" the court "emphasized repeatedly that this inquiry must be qualitative, fact-intensive, and above all tailored to the unique needs of the disabled student." <u>Id.</u> (emphasis removed).

A compensatory education award must be based upon a fact-specific, individualized assessment of the student's needs. <u>Reid</u>, 401 F.3d at 524. Since courts enjoy "broad discretion" to award compensatory education as an "equitable remedy," <u>id.</u> at 522-523, "<u>Reid</u> certainly does not require plaintiff to have a perfect case to be entitled to compensatory education." <u>Stanton ex rel. K.T. v. D.C.</u>, 680 F. Supp. 2d 201, 207 (D.D.C. 2010). Indeed, "[c]hoosing to award plaintiff *nothing*" after "plaintiff has established that she is entitled to an award . . . does not represent the qualitative focus on [a student's] individual needs that <u>Reid</u> requires." <u>Id.</u> (emphasis in original) (internal quotation marks omitted).

On each of the factors the HOD found plaintiffs' evidence lacking -- where J.C. was academically as compared to where he should be; the number of hours of compensatory education needed; what program would get the student where he should be, and what it would consist of -- the plaintiffs made a satisfactory showing under <u>Reid</u>. Jacobstein and Thomas, who had spent years working with J.C. at Bright Beginnings, provided testimony that

- 15 -

"allow[ed] for an estimation of where [J.C.] was functioning"
before and after he enrolled at Miner.  Id. (citing Friendship
Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt, 669 F.
Supp. 2d 80, 85 (D.D.C. 2009).)  They described how, in May of
2008, they recommended that J.C. continue to receive a host of
special education services.  They explained how follow-up
evaluations in June and July of 2009 reflected how far behind
J.C. was at his age in specific phonemic and motor skills and in
following oral directions after he was deemed ineligible for
special education for the duration of the 2008-2009 academic
year.  Ultimately, the plaintiffs' proposal for six to seven
weeks of hour-long, daily OT sessions, and 3-4 hours a day of
very intensive speech and language instruction, motor skills
instruction, and a program of individualized training in phonemic
skills awareness administered by a speech and language
pathologist, relied upon these experts's individualized
assessments of the nature and quantity of compensatory education
that would "provide [J.C.] the educational benefits that likely
would have accrued from special education services the school
district should have supplied in the first place."  Reid, 401
F.3d at 524.  The assessments were reasonably calculated to
provide the educational benefits that J.C. likely would have
gained from the services the school should have provided when he

- 16 -

was enrolled at Miner.[8]  The record supported an actual

compensatory education award, and the hearing officer erred in

not granting one.

<u>CONCLUSION</u>

Because the hearing officer erred by determining that the

plaintiffs adduced insufficient testimony to warrant a specific

compensatory education award under <u>Reid</u>, the plaintiffs' motion

for summary judgment will be granted and D.C.'s motion will be

denied.  A final order accompanies this memorandum opinion.

SIGNED this 31st day of July, 2012.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge

---

[8] D.C.'s argument that its current provision of special
education services to J.C. moots the plaintiffs' request for
compensatory education is misplaced.  It can be that "no
compensatory education is required for the denial of a FAPE . . .
[where the student] has flourished in his current placement[.]"
<u>Phillips</u>, 736 F. Supp. 2d at 247.  However, "a[] [subsequent] IEP
was developed which [D.C.] failed to implement, resulting in the
need for a second administrative proceeding.  A second HOD was
issued on December 9, 2009 again finding that Defendant had
denied J.C. a FAPE and ordering placement at and funding for a
non-public special education school."  (Pls.' Reply to Def.'s
Opp'n to Pls.' Mot. for Summ. J., and Pls.' Opp'n to Def.'s Cross
Mot. for Summ. J., at 2-3.)  The December 2009 HOD does not
reflect, and D.C. has not shown, that J.C. has "flourished in his
current placement[.]"  <u>Phillips</u>, 736 F. Supp. 2d at 247.